# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JONATHAN A. CATLIN, <br><br> Plaintiff, <br><br> v. <br><br> DuPAGE COUNTY MAJOR CRIMES TASK FORCE, *et al.*, <br><br> Defendants. | Case No. 04 C 2590 <br><br> Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jonathan Catlin (hereinafter, the "Plaintiff") filed the instant action under 42 U.S.C. § 1983 against DuPage County, the City of Wheaton, Illinois, and several of its police officers (hereinafter, collectively, the "Defendants"), alleging that the officers violated Catlin's civil rights when they arrested him in the mistaken belief that he was Robert Ptak (hereinafter, "Ptak"), a suspect upon whom the officers were trying to execute an arrest warrant. In addition to the federal claims, Catlin also brings various state law tort claims based on the injuries he received and damage done to his motorcycle in the ensuing fracas.

Defendants filed a Motion for Summary Judgment in the Fall of 2005. After significant delay, Catlin finally responded; his response relied to some extent on the opinion of a proffered "expert," Liutauras Dargis. This Court granted Defendants' motion

to strike Mr. Dargis' testimony.  At this time, the original Motion for Summary Judgment is finally fully briefed.

## I. BACKGROUND

The following are the uncontested facts (contested facts will be noted).

In the early afternoon of August 20, 2003, the officers received notice that Ptak was staying at the Red Roof Inn in Downers Grove, Illinois and that he drove a yellow, "crotch rocket" motorcycle, presumably a "super sport" or "super bike" capable of great acceleration and with a distinctive seat shape.  Wikipedia, Sport Bike, at *http://en.wikipedia.org/wiki/Crotch_rocket* (last visited July 9, 2007).  An arrest warrant had been issued for Ptak for unlawful distribution of a controlled substance, a Class X Felony.  Based on Ptak's record and previous run-ins with police, the officers believed that Ptak was armed, dangerous, and would likely resist arrest.  As the officers approached the Red Roof Inn, they noticed a male individual fitting Ptak's physical description (race, height, and build) sitting atop a yellow "crotch rocket" motorcycle. Unknown to the officers, this individual was Plaintiff, not Ptak.  Although the officers had information regarding Ptak's tattoos on his forearms, the officers assert that they were not able to see if Plaintiff had these tattoos.  The officers followed Plaintiff for a short time while they formulated a plan to arrest him.

The parties have propounded slightly different versions of what happened next; the differences are primarily due to the characterization of the way the officers handled Plaintiff. According to Defendants, the officers stopped Plaintiff a few blocks later while he was stopped at a traffic light and, after announcing their identities, ordered him to dismount from the motorbike. Plaintiff contends that the plain-clothed officers did not identify themselves before ordering him to dismount. Defendants contend that when Plaintiff did not immediately comply, one of the officers grabbed Plaintiff by the torso and forced him face down onto a grassy area adjacent to the street. Plaintiff, however, contends that the officers threw him off of his motorcycle and to the ground so hard that a contact lens popped out of his right eye when his head hit the pavement. The parties agree that an officer straddled Plaintiff to keep him from moving while the others attempted to place handcuffs on him and that the officers told Plaintiff to "quit resisting." Plaintiff asserts that he was kneed in the back and held down with heavy pressure during this period, and that he was finally showed a badge after asking to see one. At that point, one of the officers stated, "Mr. Ptak you are under arrest," to which Plaintiff responded, "you have the wrong guy." The officers immediately lifted Plaintiff from the ground and removed his wallet, which confirmed his identity.

After Plaintiff was uncuffed, the officers explained the reason for his detention. Defendants contend that Plaintiff did not appear to be injured but that the motorcycle had sustained minor damage. Plaintiff asserts that he had bruises on his arms, now suffers from two herniated disks in his back, and that he has post-traumatic stress disorder and severe anxiety.

Plaintiff objected to some of Defendants' facts on the basis of hearsay. These facts included the information given to the officers that there was a warrant for Ptak's arrest, that Ptak would not be taken by police (and would fight and shoot if necessary), that Ptak was believed to be riding a yellow "crotch rocket" motorcycle, that Ptak was the ring leader of an operation, and that Ptak was the most dangerous guy involved in the operation. These statements would be admissible in court as they are not hearsay. The statements are not asserted for their truth, but rather for their effect on the officers' state of mind because what is at issue here is what the officers knew at the time of the arrest, not whether such facts were true. As such, this Court can consider the fact that the officers had been given the preceding information.

Additionally, this Court disregards Plaintiff's claim that at least one of the officers drew his gun at some point during the fracas. A court will disregard an affidavit that is in conflict with a party's deposition testimony. *See Cleveland v. Policy*

*Management Systems Corp.*, 526 U.S. 795, 806-07 (1999); *Velez v. City of Chicago*, 442 F.3d 1043, 1049 (7th Cir. 2006); *Barner v. City of Harvey*, 1998 WL 664951 at *2 (N.D. Ill.). Where the two statements, however, are inconsistent because the deposition statement was mistaken, "perhaps because the question was phrased in a confusing manner or because a lapse of memory is . . . a plausible explanation for the discrepancy," a court will not disregard the affidavit. *Velez v. City of Chicago*, 442 F.3d 1043, 1049 (7th Cir. 2006). Plaintiff's claim that Officer Uhler drew a gun before approaching Plaintiff is not borne out by either Plaintiff's deposition or affidavit. Plaintiff's affidavit does assert that Plaintiff "noticed a large handgun pointed at [him] by one of the attackers" shortly before the officers yelled for him to "quit resisting." However, during his earlier deposition, Plaintiff stated that he "didn't recall seeing any weapons." (This Court notes that Plaintiff did not indicate that he did not remember *if* he saw a weapon.) As these statements are contradictory, this Court will disregard Plaintiff's claim that one of the officers drew his weapon.

## II. **STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law." FED. R. CIV. P. 56©. A fact is material if it could affect the outcome of the suit under the governing law, and a dispute is genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view all the evidence and any reasonable inferences therefrom in the light most favorable to the non-moving party. *See Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000).

### III. **DISCUSSION**

Defendants argue that the officers are entitled to qualified immunity and that the federal claims therefore fail. Qualified immunity protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established rights of which a reasonable person would have known." *Wollin v. Gondert*, 192 F.3d 616, 622 (7th Cir. 1999). The threshold inquiry is whether Plaintiff's allegations, if true, establish a constitutional violation. *See, Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Defendants argue that the officers' mistake regarding Catlin's identity was reasonable, and as such, they should be entitled to qualified immunity from the wrongful arrest. If the police mistake a person for someone they seek to validly arrest, the arrest is constitutional if they (1) have probable cause to arrest the person

sought and (2) reasonably believe that the person arrested is the person sought. *U.S. v. Marshall*, 79 F.3d 68, 69 (7th Cir. 1996). Here, there is no dispute that the officers had a valid arrest warrant for Ptak. More importantly, however, the officers made a reasonable mistake in believing that Catlin was Ptak. The undisputed facts show that the two men were of similar height, weight, hair color, facial features, and both drove yellow motorcycles. Additionally, the officers possessed information indicating that Ptak was staying at a hotel – the same hotel whose the parking lot Plaintiff appeared to have exited. In light of these similarities, the officers certainly had a reasonable basis to believe that the man they were confronting was indeed Ptak. Consequently, they are entitled to qualified immunity from the wrongful arrest claim.

Plaintiff argues that many people would have met the description of Ptak. Regardless of the fact that many men might have met Ptak's description, Plaintiff was in the exact location that the officers believed Ptak likely to be – the hotel. Plaintiff, furthermore, cites no cases from this jurisdiction suggesting that because a number of people meet a suspect's description, an officer's belief that one person meeting that description and happening to be at a location where the suspect is supposed to be is not reasonable. Plaintiff's argument that the officers should have run a license plate check on Plaintiff's

motorcycle is likewise unpersuasive; nothing in the officer's information indicated that Ptak *owned* the yellow motorcycle he was said to ride. It is this Court's view that the officers reasonably believed Plaintiff to be Ptak, and therefore, the officers are entitled to qualified immunity.

With respect to the excessive use of force, Defendants contend that the officers' actions in forcibly removing Catlin from his motorbike and placing him on the ground were reasonable, given the menacing reputation of the subject they were intending to apprehend (Ptak). Whether an officer used excessive force during an arrest is determined under an objective reasonableness standard, taking into account the severity of the crime at issue, whether the suspect posed an immediate threat to the officers' safety, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001). During their confrontation, the officers reasonably believed that they were dealing with an armed and dangerous individual who would attempt to resist arrest. The degree of force used by the officers in removing Catlin from his motorcycle and subduing him was not disproportionate to the perceived threat, given the surrounding circumstances, and thus the officers retain their immunity from Catlin's excessive force claim as well. In addition, because Catlin has not established a constitutional violation of any sort, his *Monell* claim against the

municipalities fails as a matter of law. *See, Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

With respect to Plaintiff's state law tort claims, the officers are similarly entitled to immunity, albeit under the Illinois Tort Immunity Act, which immunizes a public employee from liability while enforcing the law unless their acts are willful and wanton. *See,* 745 ILCS 10/2-202. Conduct is willful and wanton when it "shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." *Smith*, 242 F.3d at 744 (quoting 745 ILCS 10/1-210). Here, as discussed above, the officers took appropriate measures in attempting to apprehend an individual whom they reasonably, even if mistakenly, believed would pose a threat to their safety and to the community.

## IV. CONCLUSION

For the reasons stated herein, the Defendants' Motion for Summary Judgment is granted.

**IT IS SO ORDERED.**

	Harry D. Leinenweber, Judge
	United States District Court

**DATE:** July 12, 2007